IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 46183

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

JESSE TREVINO SALINAS,

      Defendant-Appellant.

)
)  **Filed:  September 25, 2019**
)
)  **Karel A. Lehrman, Clerk**
)
)  **THIS IS AN UNPUBLISHED**
)  **OPINION AND SHALL NOT**
)  **BE CITED AS AUTHORITY**
)
)

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County.  Hon. Jonathan Brody, District Judge.

Order denying motion to withdraw guilty plea, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.  Sally J. Cooley argued.

Hon. Lawrence G. Wasden, Attorney General; Andrew V. Wake, Deputy Attorney General, Boise, for respondent.  Andrew V. Wake argued.

_____

BRAILSFORD, Judge

Jesse Trevino Salinas appeals from the district court's order denying his motion to withdraw his guilty plea.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

After observing Salinas make two turns without using his turn signal, drive over the solid white line on the right-hand side of the road (commonly known as the fog line) with both passenger side tires for approximately one hundred feet and then twice more cross over the fog line, Detective Murphy pulled Salinas' car over.  Detective Murphy asked Salinas for his license, registration, and proof of insurance.  After Salinas failed to produce proof of insurance, Detective Murphy returned to his patrol vehicle to write Salinas a citation.  During this time, another officer deployed a drug dog around Salinas' car.

1

The dog alerted, and a search of Salinas' car yielded a syringe with residue. Salinas denied the syringe was his, although he admitted using methamphetamine earlier that day. Detective Murphy advised Salinas that if the syringe tested positive for drugs, he could be charged. Detective Murphy then released Salinas with a citation for failing to maintain insurance. Subsequently, the syringe tested positive for methamphetamine.

Several weeks after receiving the positive test results, Detective Murphy saw Salinas on the street. When Salinas got into a vehicle driven by another individual, Detective Murphy pulled the vehicle over to arrest Salinas based on the test results from the syringe seized during the initial traffic stop. During the arrest, Detective Murphy discovered a digital scale in Salinas' pocket, and Salinas indicated there were drugs in the vehicle stating, "everything in the car is mine." Through the passenger door, Detective Murphy observed several baggies, which were later determined to contain approximately 16 grams of methamphetamine.

Based on this evidence and the evidence discovered during the initial traffic stop, Salinas was charged with possession of a controlled substance with the intent to deliver, Idaho Code § 37-2732(a)(1)(A); possession of drug paraphernalia, I.C. § 37-2734A; two counts of possession of a controlled substance, I.C. § 37-2732(c)(1); and an enhancement for a prior drug conviction. Salinas pled guilty to possession with intent to deliver in exchange for the State agreeing to drop the other charges. The plea agreement provided the State would recommend a sentence of not more than three years determinate and five years indeterminate. The agreement, however, was contingent on Salinas appearing at court hearings and refraining from further criminal conduct. Specifically, the agreement provided that "the Defendant understands that the State is released from this agreement if [he] commits any new and additional criminal acts prior to sentencing, or if [he] fails to attend all scheduled court hearings without just cause." Salinas also completed and signed a guilty plea advisory form acknowledging he understood the rights he was waiving. The district court accepted the plea agreement, ordered a presentence investigation report (PSI), and scheduled a sentencing hearing.

Thereafter, Salinas failed a drug test performed as a condition of his release, failed to appear for an interview for purposes of his PSI, and failed to appear for his sentencing hearing in violation of his plea agreement. As a result, the district court issued an arrest warrant for Salinas. When Detective Murphy attempted to arrest Salinas pursuant to this warrant, Salinas fled on foot

2

and, while fleeing, he discarded several baggies of methamphetamine before being apprehended. Based on this conduct, the State charged him with additional crimes.

After the State charged Salinas with these new crimes, and about a month after he had pled guilty to the prior charges, he moved to withdraw his guilty plea. In support, Salinas asserted he had become aware of grounds for a motion to suppress the evidence Detective Murphy discovered during the initial traffic stop. These grounds included (1) an alleged delay in conducting the traffic stop for purposes of the drug dog; and (2) the Idaho Supreme Court's decision in *State v. Fuller*, 163 Idaho 585, 416 P.3d 957 (2018).[1] The *Fuller* decision was issued three days after Salinas failed to appear at his sentencing hearing and ruled that crossing the fog line alone is inadequate to establish reasonable suspicion for a traffic stop. *Id.* at 590, 416 P.3d at 962.

After a hearing, the district court concluded that Salinas' plea was entered knowingly, intelligently, and voluntarily; he was improperly motivated to withdraw his plea to avoid a probable increased sentence after violating his plea agreement; and he had no just reason to withdraw his plea. For these reasons, the district court denied Salinas' motion to withdraw his plea, and Salinas appeals this denial.

## II.

## STANDARD OF REVIEW

Appellate review of the denial of a motion to withdraw a plea is limited to determining whether the district court exercised sound judicial discretion as distinguished from arbitrary action. *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct. App. 1986).

## III.

## ANALYSIS

Under Idaho Criminal Rule 33(c), the timing of a motion to withdraw a plea dictates the legal standard to be applied. After sentencing, a defendant must show "manifest injustice" to withdraw a guilty plea. I.C.R. 33(c). Before sentencing, however, a defendant need only show a "just reason" for withdrawing a plea. *State v. Hanslovan*, 147 Idaho 530, 536, 211 P.3d 775, 781 (Ct. App. 2008). This case addresses a motion to withdraw a plea *before* sentencing, and thus the "just reason" standard applies.

---

[1] Although Salinas asserted additional grounds below to support his claim of a viable motion to suppress, he does not raise those additional grounds on appeal.

3

"The threshold 'just reason' requirement is 'not an onerous burden.'" *State v. Baxter,* 163 Idaho 231, 234, 409 P.3d 811, 814 (2018). Rather, "[i]t is a reasonable requirement, to be administered liberally and with due recognition of the serious consequences attending a guilty plea." *Id.* Whether a defendant has shown a just reason for withdrawing his guilty plea is a factual decision within the district court's discretion. *State v. Sunseri*, 165 Idaho 9, 14, 437 P.3d 9, 14 (2018). "The trial court is encouraged to liberally exercise its discretion in granting a motion to withdraw a guilty plea." *Id.* The district court may temper its liberal discretion, however, if the defendant has learned about a probable sentence recommendation before moving to withdraw his plea. *State v. Hartsock*, 160 Idaho 639, 641, 377 P.3d 1102, 1104 (Ct. App. 2016). For example, if a defendant reviews his PSI or other information and learns of an increased sentence recommendation, the district court may temper its liberal discretion to allow a defendant to withdraw his plea. *Id.* The district court may also temper its liberal discretion if the defendant has breached his plea agreement before seeking to withdraw his guilty plea. *Baxter*, 163 Idaho at 235-36, 409 P.3d at 815-16. In other words, "the [district] court has broad discretion to take into account the defendant's apparent motive" in seeking to withdraw his plea. *State v. Akin*, 139 Idaho 160, 162, 75 P.3d 214, 216 (Ct. App. 2003).

The first step in analyzing whether a guilty plea may be withdrawn is to determine whether the plea was knowing, intelligent, and voluntary. *Sunseri*, 165 Idaho at 14, 437 P.3d at 14. If the district court concludes it was, then the defendant has the burden of showing a just reason exists to withdraw his plea. *Hanslovan*, 147 Idaho at 535-36, 211 P.3d at 780-81. Although a defendant does not need to show a constitutional defect in his plea to establish a just reason, the withdrawal of a plea before sentencing is not an automatic right. *Id.*

In determining what constitutes a just reason, the Idaho Supreme Court in *Sunseri* has identified certain, nonexclusive factors the district court should consider:

> Among other factors, the trial court should consider: (1) whether the defendant has credibly asserted his legal innocence; (2) the length of delay between the entry of the guilty plea and the filing of the motion; (3) whether the defendant had the assistance of competent counsel at the time of the guilty plea; and (4) whether withdrawal of the plea will inconvenience the court and waste judicial resources.

*Sunseri*, 165 Idaho at 14, 437 P.3d at 14. Additionally, the defendant's good faith, his credibility, and the weight of his assertions in support of his motion bear on whether a defendant has a just reason to withdraw his plea and are matters for the district court to decide. *Id.*

4

If the defendant meets its burden of showing a just reason to withdraw his guilty plea, then the State may avoid the withdrawal of a plea by showing substantial prejudice. *Id*. at 14-15, 437 P.3d at 14-15. Substantial prejudice requires more than mere inconvenience and may include, for example, the death of a principal witness; the unavailability of evidence; or the passage of time affecting witnesses' memories, especially witnesses with limited mental abilities. *Id.* at 15, 437 P.3d at 15. Even absent substantial prejudice, however, the defendant's failure to present and support a just reason for withdrawal dictates against granting a withdrawal. *Harstock*, 160 Idaho at 641, 377 P.3d at 1104.

In this case, Salinas does not challenge the district court's conclusion that his guilty plea was knowing, intelligent and voluntary,[2] and the State does not attempt to show it would suffer substantial prejudice if Salinas' plea were withdrawn. Rather, the issue on appeal is whether the district court erred by concluding Salinas failed to show a just reason to withdraw his guilty plea. The district court did not have the benefit of the Idaho Supreme Court's discussion in *Sunseri* of the factors a court should consider when determining "just reason" for a plea withdrawal. *Sunseri* was issued after the district court's denial of Salinas' motion. Regardless, we conclude the district court's analysis comports with the proper analysis, and the district court correctly concluded Salinas failed to show a just reason to withdraw his plea.

The district court essentially concluded Salinas did not have a credible claim of legal innocence by rejecting his claim that he had a viable motion to suppress. *See Sunseri*, 165 Idaho at 14, 437 P.3d at 14 (ruling whether defendant has credibly asserted legal innocence is a factor for consideration). Salinas contends he has a viable suppression motion because Deputy Murphy purportedly delayed the traffic stop unlawfully for the drug dog and because Deputy Murphy did not have reasonable suspicion under *Fuller* to stop Salinas.

In *Fuller*, an officer observed Fuller drive onto and temporarily cross over the fog line. *Id.* at 587, 416 P.3d at 959. Based only on this conduct, the officer pulled Fuller over, discovered she did not have a valid driver's license or proof of insurance, and arrested her for

---

[2] Salinas does argue that the district court "placed too onerous a burden" on him by requiring him to show his plea was not knowing, intelligent, or voluntary. Had Salinas made such a showing, however, that would have ended the analysis and been grounds for allowing him to withdraw his plea. Because he made no argument that his plea was not knowing, intelligent or voluntary, the district court properly proceeded to the next step in the analysis--whether a just reason exists to allow Salinas to withdraw his plea.

these violations. *Id.* An inventory search of Fuller's vehicle revealed drugs and drug paraphernalia, resulting in criminal charges. Fuller moved to suppress this evidence arguing the officer lacked reasonable suspicion to stop Fuller, and the district court granted her motion. *Id.*

Affirming this decision, the Idaho Supreme Court reiterated its prior ruling in *State v. Neal*, 159 Idaho 439, 447, 362 P.3d 514, 522 (2015), that an isolated incident of touching a fog line does not constitute a traffic violation. *Fuller*, 163 Idaho at 590, 416 P.3d at 962. Further, the Court ruled "merely that a tire temporarily touches or crosses the fog line will not by itself give rise to a reasonable, articulable suspicion" for a traffic stop. *Id.* Importantly, however, the Court ruled that driving on or crossing the fog line may still factor into reasonable suspicion: "To be sure, driving onto or across the fog line may be considered when evaluating whether an overall pattern of erratic or unsafe driving gives rise to a reasonable, articulable suspicion that [a traffic violation has occurred] under a totality of circumstances." *Id.*

In this case, the district court correctly distinguished the facts in *Fuller* from Deputy Murphy's traffic stop of Salinas on the basis that Deputy Murphy relied not only on the fact that Salinas crossed over the fog line, but also on the fact that he failed to use his turn signals twice. In other words, Deputy Murphy did not base his reasonable suspicion exclusively on Salinas' crossing the fog line. Rather, in accord with *Fuller*, Deputy Murphy's reasonable suspicion was based on Salinas' overall pattern of driving under the totality of the circumstances, which included more than merely crossing the fog line. *See id.*

Salinas contends the district court improperly speculated about the facts in this case to distinguish it from *Fuller*. Specifically, Salinas challenges the district court's reliance on Deputy Murphy's probable cause affidavit, arguing the district court was "merely speculating after reading the probable cause affidavit as to what facts would be introduced at [a suppression] hearing." Salinas' argument, however, misconstrues the burden: "The burden rests on the defendant to demonstrate a justification for withdrawal of the guilty plea." *State v. Stone*, 147 Idaho 330, 333, 208 P.3d 734, 737 (Ct. App. 2009).

Whether meeting this burden requires the defendant to offer admissible evidence in support of his motion to withdraw his plea turns on the nature of the defendant's purported just reason for withdrawing his plea. As this Court has previously ruled in *Stone*:

> Whether this showing [of a just reason] requires presentation of new evidence
> depends upon the basis for the motion--whether it turns upon matters that appear
> in the court's record, or that occurred in open court, or alleged events that

6

occurred outside the judicial proceedings and that the State has not acknowledged or stipulated to.

*Id.* In this case, Salinas' reliance on *Fuller* turns on matters outside the record--namely, it turns on whether facts support Salinas' assertion that Deputy Murphy improperly based his reasonable suspicion exclusively on Salinas' crossing the fog line. Because these purported facts were not in the record, Salinas had the burden to offer them in support of his motion to withdraw his plea. Salinas, however, failed to make any showing regarding the traffic stop.

Salinas contends that because the "just reason" requirement is "not an onerous burden" he was not required to present anything other than the mere assertion he had a viable motion to suppress under *Fuller*. A mere assertion of a legal argument without more, however, does not satisfy Salinas' burden to demonstrate a justification for withdrawing a plea agreement. Absent an actual showing based on admissible evidence that Salinas' motion to suppress would be viable, the only facts in the record were that a motion to suppress was not viable. As a result, Salinas failed to meet his burden.

This failure to make a showing with admissible evidence is also fatal to Salinas' claim that Deputy Murphy unlawfully delayed the initial traffic stop for the drug dog. Nothing in the record supports Salinas' assertion that Deputy Murphy improperly delayed the stop. Salinas offers no factual support for his claim. Indeed, he does not even cite any supporting case law. Although he is correct that the district court did not mention his drug-dog argument in denying his motion to withdraw his plea, Salinas provided nothing for the district court to consider. Therefore, any failure to mention the argument was not an abuse of discretion.

In addition to rejecting Salinas' claim of a viable legal defense, the district court also ruled he was not motivated by a claim of innocence but, rather, by the fact he had twice violated his plea agreement by failing to appear for his sentencing hearing and being charged with new crimes. Because Salinas had violated the plea agreement, the State was no longer bound by its recommended sentence. The district court concluded this circumstance was akin to Salinas being improperly motivated to withdraw his plea after learning information about his probable sentence in his PSI.

Salinas accuses the district court of speculating about the facts to reach this conclusion, including purportedly speculating the State would not be bound by the plea agreement and would request an increased sentence. Although Salinas concedes the State would likely no longer be bound by the plea agreement, he argues "none of these speculative facts had come to fruition at

the time [he] moved to withdraw his plea." Salinas, however, does not dispute he violated the plea agreement twice before seeking to withdraw his plea. Indeed, he does not and cannot dispute that he failed to appear at his sentencing hearing and was charged with additional crimes based on conduct occurring after signing the agreement--both of which incidents violated the plea agreement. As a result, the district court's conclusion that Salinas likely sought to withdraw his plea to avoid an increased sentencing recommendation was not speculative. Rather, Salinas' good faith and credibility about his motivation for moving to withdraw his plea were matters for the district court to decide. *See Sunseri*, 165 Idaho at 14, 437 P.3d at 14; *see also State v. Litz*, 122 Idaho 387, 389, 834 P.2d 904, 906 (Ct. App. 1992) (affirming denial of motion to withdraw plea where defendant believed State would request harsher sentence after defendant violated plea agreement). Having concluded Salinas was motivated by information that the State would likely recommend an increased sentence, the district court correctly concluded it could temper its liberal discretion in reviewing Salinas' motion to withdraw his plea. *See Baxter*, 163 Idaho at 235-36, 409 P.3d at 815-16 (concluding district court may temper liberal discretion after defendant breaches plea agreement); *see also Hartsock*, 160 Idaho at 641, 377 P.3d at 1104 (concluding district court may temper liberal discretion if defendant has reviewed his PSI or received other information about sentencing).

Finally, Salinas criticizes the State for not addressing the district court's ruling in the context of *Sunseri*. Regardless, the district court's analysis both comports with the analysis outlined in *Sunseri* and relies on case law *Sunseri* cites with approval, including *Hanslovan* and *Harstock*. Although the district court did not address all the factors identified in *Sunseri*, none of the remaining factors support Salinas' position that just reason exists to allow him to withdraw his plea. Nothing in the record indicates Salinas' counsel was incompetent at the guilty plea stage. A total absence of any admissible evidence to support Salinas' proposed suppression motion suggests addressing such a motion would have been a waste of judicial resources. Although there was not a lengthy delay between Salinas' plea and his motion to withdraw that plea, the events that occurred during that interim were significant. During the interim, Salinas violated his plea agreement twice, which weighs in favor of not allowing him to withdraw his plea. For these reasons, the district court did not abuse its discretion by ruling Salinas failed to show a just reason to withdraw his plea.

## IV.

## CONCLUSION

Because Salinas has failed to show there is just reason to allow him to withdraw his guilty plea, we affirm the district court's order denying his motion.

Chief Judge GRATTON and Judge HUSKEY **CONCUR**.